**LEE LITIGATION GROUP, PLLC**
Rony Guldmann (RG 5323)
148 W 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-661-0052
Fax: 212-465-1181
rony@leelitigation.com
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

H.L., by his parent C.L.;
C.L., individually and on behalf of H.L.,
*on behalf of themselves all others similarly situated*,

                   Plaintiffs,

                -against-

HORNBLOWER GROUP, INC.
    d/b/a NYC FERRY, and
NEW YORK CITY ECONOMIC
DEVELOPMENT CORPORATION,

                   Defendants.

Case No.:

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

---

Plaintiff H.L., by his parent C.L., and Plaintiff C.L., individually and on behalf of H.L. (collectively, "Plaintiffs"), on behalf of all others similarly situated, by and through their undersigned attorneys, hereby file this Class Action Complaint against Defendants HORNBLOWER GROUP, INC. d/b/a NYC FERRY and NEW YORK CITY ECONOMIC DEVELOPMENT CORPORATION (collectively, "Defendants") and state as follows:

## NATURE OF THE ACTION

1. Plaintiffs C.L. and his autistic minor son, H.L. bring this class action against Defendants for failing to make reasonable accommodations for autistic guests attempting to use

the New York City Ferry ("the Ferry").

2. Plaintiffs bring this class action under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq*; New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law, Executive Law § 292 *et seq*.; New York State Civil Rights Law ("NYSCRL"), CLS Civ R § 40 *et seq*.; New York City Human Rights Law ("NYCHRL"), N.Y.C. Administrative Code § 8-102, *et seq.*

3. Plaintiffs seek all applicable compensatory and punitive damages, injunctive relief, and attorneys' fees and costs.

## PARTIES

4. Plaintiff C.L. is and at all relevant times has been a resident of New York County, New York. Plaintiff H.L. is C.L.'s minor son and has been diagnosed with autism.

5. Defendant HORNBLOWER GROUP, INC. ("Defendant Hornblower" or "Hornblower") is a foreign business corporation organized under the laws of California and headquartered at Pier 3, The Embarcadero, San Francisco, California 94111 with an address for service of process at 122 East 42nd Street, 18th Floor, New York, NY 10168.

6. Defendant HORNBLOWER GROUP, INC. is contracted by Defendant NEW YORK CITY ECONOMIC DEVELOPMENT CORPORATION to operate the New York City Ferry and claims to "offer specialized knowledge and expertise required to transport passengers, vehicles, and other cargo safely across inland and coastal waterways."[1]

7. Defendant NEW YORK CITY ECONOMIC DEVELOPMENT CORPORATION ("NYCEDC") is a public-benefit corporation that is organized under the laws of New York and headquartered at One Liberty Plaza 165 Broadway, New York, NY 10006.

---

[1] https://www.hornblowercorp.com/

2

8. Defendant NYCEDC contracted Defendant Hornblower to operate the Ferry. NYCEDC is and has been intimately involved in shaping how the Ferry operates, including in the design of the Ferry's customer service protocols. For example, NYCEDC boasted that its contract with the Hornblower entities would provide "Upgraded Ridership Experience," including (1) "Free Wi-Fi onboard all NYC ferries," (2) "Enhanced real-time passenger information including landing wait time estimates and on-board seat and bike spot availability," and (3) "Expanded access to onboard and land-side schedule and stop information."[2] Thus, NYCEDC is intimately involved in determining which services and amenities the Ferry does and does not offer.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction of this action pursuant to:

   (A) 28 U.S.C. § 1331 and 42 U.S.C. § 12188, for Plaintiffs' claims arising under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, ("ADA"); and

   (B) 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. See 28 U.S.C. § 1332(d)(2).

   (c) 28 U.S.C. § 1367, which provides supplemental jurisdiction over Plaintiffs' pendent claims under NYSHRL, NYSCRL, and NYCHRL.

10. Venue is proper in the Southern District pursuant to 28 U.S.C. §§ 1391 because Defendant NYCEDC is headquartered in this District and because the events giving rise to

---

[2] https://edc.nyc/press-release/nycedc-announces-new-nyc-ferry-contract-hornblower-group

3

Plaintiffs' claims transpired in this District.

## STATEMENT OF FACT

11. This class action seeks to put an end to systemic civil rights violations committed by Defendants. As a place of public accommodation, the Ferry is required under the Americans with Disabilities Act ("ADA") and New York civil rights laws to offer reasonable accommodations to individuals with disabilities when such is required to facilitate their full and equal enjoyment of the facility.

12. Plaintiff H.L. has been diagnosed with Autism Spectrum Disorder, a medically recognized developmental disability that can create significant social, communication, and behavioral challenges for those suffering from it. Such individuals continuously confront problems such as social isolation, difficulties gaining employment, and myriad stresses that others will never encounter.

13. Autism can make it difficult for individuals, and especially for children, to tolerate certain forms of deferred gratification, such as waiting in line. NeuroLaunch, an organization committed to disseminating accurate information about developments in neuroscience to the public, provides four reasons why waiting in line can be psychologically painful for autistic individuals:

**Sensory Sensitivities and Overstimulation:**
Many individuals with autism experience heightened sensory sensitivities, which can make waiting in line an overwhelming experience. The bustling environment of a queue often involves a barrage of sensory inputs, including loud noises, bright lights, and physical proximity to strangers. These stimuli can quickly lead to sensory overload, causing distress and discomfort for those on the autism spectrum.

**Difficulties with Social Cues and Personal Space:**
Navigating Autism Struggles in the Workplace: Challenges and Solutions for Successful Employment can be challenging, and similar difficulties arise in queue situations. Individuals with autism may struggle to interpret social cues and understand unspoken rules about personal space. This can lead to inadvertent

4

> breaches of social norms, such as standing too close to others or not recognizing when it's their turn to move forward in line.
>
> **Challenges with Time Perception and Patience:**
> Many individuals with autism experience differences in time perception, which can make waiting feel even more challenging. The concept of time passing may be abstract or difficult to grasp, leading to increased frustration and impatience. This can be particularly problematic in situations where the wait time is uncertain or longer than expected.
>
> **Anxiety and Uncertainty in Unfamiliar Situations:**
> Waiting in line often involves a degree of uncertainty, which can be particularly anxiety-inducing for individuals with autism. Not knowing how long the wait will be, what to expect at the end of the line, or how to navigate potential social interactions can create significant stress and discomfort.[3]

14. Courts have routinely recognized that problems that nondisabled individuals will experience as trivial inconveniences may be psychologically debilitating to those suffering from autism. *See A.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1281 (11th Cir. 2018) ("Under the above section discussing 'insistence on sameness' and 'adherence to routines,' the DSM-5 provides examples of behaviors including 'extreme distress at small changes, difficulties with transitions, rigid thinking patterns, greeting rituals, need to take same route or eat same food every day.' See DSM-5 at 50. Courts recognize this aspect of autism."); *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 996 (2017) ("Autism is a neurodevelopmental disorder generally marked by impaired social and communicative skills, engagement in repetitive activities and stereotyped movements, resistance to environmental change or change in daily routines, and unusual responses to sensory experiences.") (quotation marks and citations omitted); *United States v. Spero*, 382 F.3d 803, 804 n.3 (8th Cir. 2004) ("Affected individuals may adhere to inflexible, nonfunctional rituals or routine.") (quoting Physician's Desk Reference Medical Dictionary 171 (2d ed. 2000)).

---

[3] https://neurolaunch.com/autism-and-waiting-in-line/

15. Plaintiff H.L. was suffering from the classic symptoms of autism on a Saturday afternoon in August 2024, when he and his father, Plaintiff C.L., arrived at the NYC Ferry terminal located at Wall Street/Pier 11 in order to take the Ferry's East River route to the DUMBO/Fulton Ferry terminal in Brooklyn. The Wall Street terminal serves as one of the main ferry landings for several routes with especially high passenger traffic and long lines during peak hours. NYC Ferry's peak season in the summer sees particularly high ridership on weekends between 11 AM and 7 PM.

16. C.L. immediately noticed that the line was exceedingly long and realized that the wait would cause his autistic son great frustration and anxiety (for reasons explained above). C.L. observed no signage announcing any accommodation for H.L.'s autism (or for any disability, for that matter). Nor was there any separate, shorter line for patrons with disabilities. And yet C.L. and H.L. needed to get to their destination. So they joined the line and what C.L. had feared took place, as H.L. descended into stress and anxiety in the crowded and bustling environment.

17. As a result of Defendants' action, H.L. was denied the full and equal enjoyment of the Ferry, given the trauma created by the long wait in line. This was the result of Defendants' willful indifference to their obligations under the Americans with Disability Act and related New York State civil rights laws, which require venues like the NYC Ferry to accommodate individuals with disabilities so as to grant them equal access to, and equal enjoyment of, the facilities.

18. At the Wall Street/Pier 11 terminal visited by C.L. and H.L., there was no signage that in any way communicated any willingness by Defendants to accommodate individuals with disabilities (of any kind). Employees were unaware of any right for disabled

individuals to be accommodated.

19. Thus, the Ferry is now being operated in clear violation of the ADA and related state civil rights laws. There is no signage announcing accommodation of any kind, and employees have not been trained or instructed to accommodate individuals with autism. Indeed, Defendants do not have clear protocols in place to accommodate disabilities of any kind.

20. This class action seeks compensatory and punitive damages for all the victims of Defendants' policies. It also seeks declaratory and injunctive relief to correct those policies by forcing Defendants to comply with all relevant state and federal laws.

## CLASS ACTION ALLEGATIONS

21. Plaintiffs seek certification of the following nationwide Class pursuant to Rule 23(a), 23(b)(2), and/or 23(b)(3) of the Federal Rules of Civil Procedure: "All individuals in the United States who have been diagnosed with autism and, during the relevant statutory period, either had to stand in line to use the Ferry or were deterred from using the Ferry because of the line."

22. Millions of Americans have autism, including many in New York. Thus, Class members are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action benefits both them and the judicial system.

23. There are questions of law and fact common to the Class that predominate over any individual questions, including without limitation, the following:

   (a) Whether the Ferry is a place of public accommodation under the ADA and related state laws;

   (b) Whether Defendants' failure to accommodate individuals with autism denies them the full and equal enjoyment of the Ferry.

24. The claims of Plaintiffs are typical of those of Class members. Like H.L., Class members are autistic individuals for whom lines create access barriers to the full and equal enjoyment of the facilities.

25. Plaintiffs will fairly and adequately represent and protect the interests of Class members because Plaintiffs have retained competent counsel that is experienced in both complex class action litigation and ADA cases. Plaintiffs have no interests antagonistic to those of other Class members.

26. Class certification is appropriate pursuant to Fed. R. Civ P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole.

27. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class members clearly predominate over questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

28. Judicial economy will be served by maintenance of this lawsuit as a class action in that this will prevent burdens that would otherwise be placed upon the judicial system by the filing of numerous similar suits by other autistic individuals or their guardians.

## **CAUSES OF ACTION**

### **FIRST CAUSE OF ACTION**

**Violation of 42 U.S.C. § 12181,** *et seq.*—**Title III of the Americans with Disabilities Act**
*(brought on behalf of Plaintiffs and the Class)*

29. Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully herein and further alleges as follows:

30. Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182(a), provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12181(b)(2)(D)(I).

31. Under 42 U.S.C.S. § 12102, disability is defined as follows:

> (1) Disability. The term "disability" means, with respect to an individual—
> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>     . . . .
> (2) Major life activities.
> (A) In general. For purposes of paragraph (1), major life activities include, but are not limited to . . . eating . . . .

32. The Ferry is a public accommodation within the definition of 42 U.S.C. § 12181(7)(G) because it is a "terminal, depot, or other station used for specified public transportation."

33. Defendants are subject to Title III of the ADA because they own and/or operate the Ferry.

34. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

35. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an

9

opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

36. Under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

37. Under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

38. The acts and omissions alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* and the regulations promulgated thereunder.

39. When Defendants' access barriers were brought to their attention by Plaintiff C.L., they refused to take any steps to remove these barriers.

40. Defendants will continue in the future to discriminate against H.L. and other similarly situated individuals in violation of the ADA. C.L. and H.L. hope to visit the Ferry again. However, they are deterred from this by Defendants' ongoing policy of willful discrimination against autistic persons.

41. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiffs and Class members will continue to suffer irreparable harm.

42. The Court should require Defendants to (1) institute a separate, shorter line reserved for disabled individuals, including those with autism, at all Ferry terminals and (2) train Ferry staff to provide reasonable accommodations to guests with disabilities.

43. Plaintiffs are also entitled to reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

**Violation of New York State Human Rights Law, N.Y. Exec. Law, § 292 *et seq*.**
*(brought on behalf of Plaintiffs and the Class)*

44. Plaintiffs reallege and incorporate by reference the foregoing allegations as though fully set forth herein and further allege as follows:

45. N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

46. The Ferry is a sales establishment and public accommodation within the definition of N.Y. Exec. Law § 292(9).

47. Defendants are subject to the New York Human Rights Law because they own and/or operate the Ferry. Defendants are persons within the meaning of N.Y. Exec. Law § 292(1).

48. Defendants are violating N.Y. Exec. Law § 296(2)(a) in imposing access barriers to the Ferry. These barriers preclude autistic would-be guests from accessing the full and equal enjoyment of the Ferry.

49. Under N.Y. Exec. Law § 296(2)(c)(I), unlawful discriminatory practices include,

11

among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations."

50. Under N.Y. Exec. Law § 296(2)(c)(II), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

51. Defendants' actions and inaction constitute willful intentional discrimination against Class members in violation of N.Y. Exc. Law § 296(2).

52. Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

53. Thus, Defendants discriminate, and will continue in the future to discriminate, against Plaintiffs and Class members in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations, and/or opportunities offered by the Ferry.

54. Unless the Court enjoins such discrimination, Plaintiffs and Class members will continue to suffer irreparable harm.

55. Plaintiffs and Class members are entitled to compensatory and punitive damages for each and every time they either failed to access, were deterred from attempting to access, or had to wait in line to access, the Ferry as the result of Defendants' discriminatory policies.

56. Plaintiffs are also entitled to reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

**Violation of New York State Civil Rights Law, CLS Civ R § 40** *et seq.*
*(brought on behalf of Plaintiffs and the Class)*

57. Plaintiffs reallege and incorporate by reference the foregoing allegations as though fully set forth herein and further allege as follows:

58. N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . . ."

59. N.Y. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, [shall] be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

60. The Ferry is a sales establishment and public accommodation within the definition of N.Y. Civil Rights Law § 40-c(2).

61. Defendants are subject to New York Civil Rights Law because they own and/or operates the Ferry . Defendants are persons within the meaning of N.Y. Civil Law § 40-c(2).

62. Defendants are violating N.Y. Civil Rights Law § 40-c(2) in imposing access barriers to the Ferry. These deny autistic patrons full and equal access to facilities, goods, and

services that Defendants make available to the non-disabled public.

63. N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty-two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . . ."

64. Thus, Class members are each entitled to damages of at least $100 for each of Defendants' violations.

## FOURTH CAUSE OF ACTION

**Violation of New York City Human Rights Law, N.Y.C. Admin. Code § 8-102, *et seq.***
*(brought on behalf of Plaintiffs and the Class)*

65. Plaintiffs reallege and incorporates by reference the foregoing allegations as if set forth fully herein and further allege as follows:

66. N.Y.C. Administrative Code § 8-107(4)(a) provides that "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

67. The Ferry is a sales establishment and public accommodation within the definition of N.Y.C. Administrative Code § 8-102(9).

68. Defendants are subject to NYCHRL because they own and/or operate the Ferry. Defendants are persons within the meaning of N.Y.C. Admin. Code § 8-102(1).

69. Defendants are violating N.Y.C. Admin. Code § 8-107(4)(a) in imposing access barriers to the Ferry, thereby denying autistic patrons full and equal access to facilities, goods, and services that Defendants make available to the non-disabled public. Specifically, Defendants

are required to "make reasonable accommodation to the needs of persons with disabilities" and to "make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

70. Defendants' actions constitute willful intentional discrimination against Plaintiffs and Class members on the basis of a disability in violation of the N.Y.C. Admin. Code §§ 8-107(4)(a) and 8-107(15)(a) in that Defendants have:

(a) operated facilities that are inaccessible to autistic individuals, with knowledge of the discrimination; and/or

(b) operated a public accommodation where it is sufficiently intuitive and/or obvious that it is inaccessible to autistic individuals.

71. Defendants have failed to take any prompt and equitable steps to remedy their ongoing discriminatory conduct.

72. Defendants discriminate, and will continue in the future to discriminate, against Plaintiffs and Class members on the basis of their autism in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations, and/or opportunities afforded by the Ferry. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiffs and Class members will continue to suffer irreparable harm.

73. Plaintiffs are also entitled to compensatory and punitive damages under N.Y.C. Administrative Code §§ 8-120(8) and 8-126(a) for each offense.

74. Plaintiffs are also entitled to reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request relief as follows:

a. An injunction requiring Defendants to take all the steps necessary to place the Ferry in full compliance with the requirements of the ADA, New York civil rights laws, and their implementing regulations, including but not limited to (a) creating a separate, shorter line for individuals with disabilities in order to ensure priority boarding at all Ferry terminals and (b) training employees to reasonably adjust rules in order to manage unique and/or unforeseen contingencies caused by guests' disabilities;

b. A declaration that Defendants own, maintain and/or operate the Ferry in a manner that discriminates against autistic patrons in violation of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Administrative Code § 8-107, *et seq.*;

c. An Order certifying this case as a Class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiffs as Class Representatives, and appointing their attorneys as Class Counsel;

d. All applicable compensatory, statutory, and punitive damages under the ADA, NYCHRL, NYSHRL, and NYSCRL;

e. Plaintiffs' reasonable attorneys' fees, expenses, and costs;

f. Pre- and post-judgment interest to the extent permitted by law; and

g. Such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

DATED: April 11, 2025

*/s/ Rony Guldmann*
Rony Guldmann

LEE LITIGATION GROUP, PLLC
Rony Guldmann (RG 5323)
148 W 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-661-0052
Fax: 212-465-1181
rony@leelitigation.com
*Attorneys for Plaintiffs and the Class*